1  SUSAN SCOFIELD
2  4429 East Village Rd. #410
3  Long Beach, CA. 90808
4  (661) 369-3206
5  **PLAINTIFF IN PRO PER**



**FILED**
CLERK, U.S. DISTRICT COURT

1/17/24

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ eee _____ DEPUTY

6
7  # UNITED STATES DISTRICT COURT
8  # CENTRAL DISTRICT OF CALIFORNIA
9

10  SUSAN SCHOFIELD, and individual,

11  PLAINTIFF

12  v.

13

14  COUNTY OF LOS ANGELES, et al.,

15  DEFENDANTS

16

Case No: 2:22-cv-04332-JGB (AS)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
Request For Extension (Docket No. 79) And Motion To Compel; And, For Entry Of A Protective Order

17  **TO THE HONORABLE COURT:**

18      Pursuant to the Court's order of February 3, 2023, Plaintiff Susan Schofield

19  ("Plaintiff") hereby submits her Request for Extension of Time RE: Discovery

20  Deadlines (Docket No. 79). Plaintiff also asserts a Motion to Compel County of Los

21  Angeles to Produce Juvenile Case Files/Records; and, for Entry of a Protective

22  Order.

23  **I. TWO INITIAL ISSUES.**

24      Plaintiff wishes to make two initial points to the Court.

25      *First*, Plaintiff has made several attempts to remedy the issue surrounding

26  the release of the 827 records. On February 3, 2023, it became evident that both

27  Plaintiff and counsel on record ("Ms. Gysler") for the Defendant County of Los

28  Angeles ("COLA") were dissatisfied with the lengthy delay. COLA, who had not

received the documents either, suggested a joint stipulation to extend discovery as a remedy. As a result, this court granted this order on February 3, 2023 (Docket No. 79), extending the deadlines to reflect the following: (1) Discovery & Expert Discovery from May 22, 2023 to December 22, 2023; (2) Discovery Motion Filing from July 24, 2023 to February 26, 2024; (3) All other motion filings from August 24, 2023 to March 25, 2024.

Since the orders were issued in February 2023, Plaintiff has persistently followed up with COLA through emails and direct calls over the past ten months. On November 20, 2023, with the December 22nd discovery deadline looming, Plaintiff proactively reached out to COLA, proposing to discuss the best approach to resolving the release of records. In response, Ms. Gysler indicated a need to consult the Court before devising a plan. Despite subsequent follow-ups by the Plaintiff on November 21 and 27, COLA did not respond. Consequently, on November 29, 2023, Plaintiff expressed intentions to file a Motion to Compel for the release of the 827 Juvenile Case Records for Discovery, noting it had been nearly a year since the stipulation was agreed upon. Ms. Gysler replied promptly, acknowledging the delay and promising to follow up once more. Plaintiff, exercising caution, informed COLA that if there was no update by Friday, the motion would be prepared. As of this writing, there has been no further response from COLA.

There is no clear time frame as to how many weeks, months, or years that it would take for the juvenile court to complete this process which impairs Plaintiff's ability to prosecute this case.

*Second*, suits based on familial association under the First, Fourth, and Fourteenth Amendment may not be so rare as to be "unheard of," but are a very small sliver of civil rights litigation, unique in so many ways from other types of civil rights actions. For that reason, much detail is reiterated herein about the juvenile dependency court process out of an abundance of caution that the Court may not have personal familiarity. Also, the term "DCFS" refers to the Los Angeles County

Department of Children and Family Services and is the County agency that employs defendants.

## II. INTRODUCTION, BACKGROUND, AND CONTEXT

In January Schofield v. County of Los Angeles (case no. 2:22-cv-05590-JGB (AS), docket no. 60, ("Jani's Motion to Compel")), Plaintiff's daughter emphasized details about the juvenile dependency court process out of an abundance of caution that the Court may not have personal familiarity. Given the fact that Plaintiff is aware that this Court has been notified of the challenges Plaintiff faces considering individuals who operate in a system protected by confidentiality laws that are believed by many to foster daily abuse of families, of power, and of constitutional rights. Here, Plaintiff will summarize the points in Jani's Motion to Compel.

In Jani's Motion to Compel, the plaintiff sheds light on the complexities of obtaining juvenile case file records in dependency cases, primarily involving the conduct of DCFS personnel. Central to this argument is the legal framework under California's Welfare & Institution Code §300 and §827, which outlines the processes for initiating juvenile cases and accessing case files. Plaintiff, Jani, points out the growing issue of warrantless child removals, exemplified by cases like *Rafaelina Duval v. County of Los Angeles*[1], and the subsequent challenges faced in the juvenile court system. A key concern is the potential conflict of interest in these courts, exacerbated by the frequent interactions between DCFS employees, County Counsel, and juvenile court judges, leading to a perceived bias against families.

Further, Plaintiff, Jani, highlights systemic issues such as closed courtrooms and the admissibility of hearsay in juvenile dependency proceedings, which often favor the child welfare agency's stance. This situation, described as a 'fraternity/sorority effect,' raises serious questions about the impartiality of the juvenile justice system. Plaintiff, Jani, also emphasizes the importance of civil rights

---

[1] California Superior Court, Case No. BC470714

cases under 42 U.S.C. 1983, arguing that the obstacles in accessing juvenile case files pose significant barriers to justice. Plaintiff, Jani, asserts that the court has the authority to facilitate access to these vital records, bypassing the complex §827 process, thereby upholding the principles of justice and civil rights in these sensitive cases.

All of which applies *with equal force* in this Motion to Compel.

**III. OTHER MOTION TO COMPEL ORDERS – New Information**

Plaintiff, in this Motion to Compel, carefully outlines several crucial aspects. Firstly, Jani's Motion to Compel is referenced for its legal nuances, particularly Ms. Gysler's opposition statements emphasizing the premature nature of bypassing the Juvenile Court 827 Petition and the defense's perceived lack of advantage in compelling the Juvenile Court's release of case file materials. Interestingly, despite Ms. Gysler's assertion of uncertainty regarding Jani's filing of a petition, Jani's Case Management Plan (Docket No. 39 at 3:19-20) clearly states her 827 Petition filing date as August 10, 2023.

Contrastingly, in *Mark G. v County of Los Angeles* (case no. 2:22-cv-04641-ODW-ADS), where Ms. Gysler also represents the defendants, a stipulated Motion to Compel was filed without any apparent 827 Petition filing, as seen in Mark G. at Docket No. 43. This approach starkly differs from the stance taken in Jani's case and was executed in a shorter timeframe.

Turning to the fraternity/sorority effect, the case of Marissa H. (*Marissa Hernandez v. County of Los Angeles*, case no. 2:21-cv-07858-PA (JC)) is examined. Here, a criminal case ensued after child abduction allegations, leading to a swiftly granted 827 petition filed by the district attorney. In contrast, Marissa's own 827 petition, filed around October 19, 2023, in her civil case, remains unanswered.

Plaintiff now brings these new points to light, contrasting with the arguments made in Jani's Motion to Compel, anticipating COLA's likely opposition to this Motion to Compel. In Jani's case, the court allowed a 4-month review period

post-order, seemingly, for the juvenile court to process the matter. However, in the current scenario, over a year and two months have passed since Plaintiff filed her 827 petition, with almost a year spent alongside Ms. Gysler in attempting to access records through the juvenile court's "new" process.

Acknowledging Ms. Gysler's small office setting and her potential focus on other matters (as indicated in Docket No. 81 at 3:8 and 3:15-16), Plaintiff expresses understanding but also highlights the ongoing delay's detrimental impact on her ability to prosecute the case effectively. This situation underscores the need for timely access to juvenile records and the potential inconsistencies in the application of legal processes in similar cases.

## IV. ARGUMENT

### A. This Federal Court Absolutely Has Authority To Order Disclosure Of The Juvenile Case Files and Absolutely Should

The authority of this Federal Court to order the production of juvenile case files is indisputable. As per the first statute in the Federal Rules of Civil Procedure, FRCP 1, it is incumbent upon the Court and the parties to "secure the *just*, *speedy*, and *inexpensive* determination of every action and proceeding." However, the principles of justice, speed, and cost-efficiency are not adequately satisfied by the state dependency court process.

Significant precedents in various District Courts show that other civil rights attorneys specializing in this subject matter have successfully obtained similar orders. These cases, including *Monteihl v. County of Los Angeles* (2:10-cv-08183-SVW-JEM (Central Dist.), at Dkt. 16), *Baker v. County of Los Angeles* (2:11-cv-05550-GHK-PJW (Central Dist.), Judge Patrick J. Walsh ordered records produced by DCFS. [Dkt. 66 – Note Federal case filed 7/6/11 – Dkt. 66 filed 9 months later, 4/6/12]), *Xoss v. County of Los Angeles* (2:12-cv-01400-PSG-RZ (Central Dist.),

[Dkt. 44]), and *Sigal v. County of Los Angeles* (Case No. 17-CV-04851-RGK-AGR (Central Dist.). [Dkt. 68]), demonstrate the Court's capability to expedite meaningful and thorough discovery, thereby providing due process in suits against child welfare agencies. In *Keilch v. Suenia Romero* (15-CV-01526 (Northern Dist.)), the Federal Court upheld its order for document production despite initial resistance, further illustrating this authority.

The cases just cited are among those represented by civil rights attorney Robert Powell. Other notable attorneys in this field include Shawn A. McMillan and Donnie R. Cox, who also frequently handle similar cases. While specific instances of Donnie R. Cox achieving comparable orders are not currently known to Plaintiff, the involvement of Ms. Gysler and Shawn A. McMillan in the case of *Mark G.* is noteworthy. In this particular instance, they successfully filed a stipulated Motion to Compel, which was subsequently granted by the Honorable Autumn D. Spaeth in the California Central District Court. This highlights the collaborative efforts and successes of attorneys within this specialized legal domain to grant such orders.

While California W&IC §827 establishes the confidentiality of juvenile case files[2], in federal question cases like this, privileges are governed under federal common law (FRE 501), which does not recognize privilege for juvenile records. The Ninth Circuit, in *Gonzalez v. Spencer*, specifically recognized the district court's power to order the disclosure of juvenile records, superseding state law. *Gonzalez v. Spencer*, 336 F.3d 832, 835 (9th Cir. 2003).

In fact, federal courts routinely order production of information deemed private under California statutes. Most notably are peace officer personnel files, which enjoy strict statutory protections, and require a motion from the requesting party and court order for production.[3] Federal courts reject this statutory process in

---

[2] California Rule of Court 5.552 defines "juvenile case file" broadly and includes all documents filed in a juvenile court case; all documents prepared by or made available to social workers; and all material admitted into evidence at juvenile court hearings.
[3] Under California law, peace officer personnel records are deemed confidential and subject to discovery only as outlined in Evid. Code §§1043 and 1045. A party seeking disclosure must file a written motion, supported by

favor of disclosure in response to a discovery request. [*Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987); *Soto v. City of Concord*, 162 F.R.D. 603 (N.D. Cal. 1995)] *Federal courts have reasoned that the federal policy on discovery is a liberal standard, and applying California privilege law would severely limit civil-rights plaintiffs from gaining access to the police files in dispute.* [*Soto*, 162 F.R.D. at 609, fn. 2] The privacy interests at stake can be protected by a "tightly crafted" protective order that can limit who has access to the sensitive information. [*Id.* at 662] The proposed Order submitted to this Court has such a protective order.

Here, Plaintiff is not requesting anything from the juvenile case file that would be prohibited from release or disclosure under the §827 process, not a single document.

In a Northern District Court of California case, the court held that §827 does not bind federal courts, citing *Maldonado v. Secretary of Calif. Dept of Corr. & Rehab.*, 2007 WL 4249811 (E.D. Cal. Nov. 30, 2007).[4] In that case, the district court ordered release of documents pertaining to a minor who died while in custody of a youth correctional facility after finding that *a protective order would remedy any concern about privacy rights.* [*Id.* 7]

While this Court is not "bound" by California law pertaining to juvenile records, it is noteworthy that *even if* confidentiality of juvenile case files applies, *it is not absolute* even under state law. [*In re Keisha T.,* 38 CA.4th 220 (1995)] In fact, §827 contemplates that inspection by third parties is necessary. [*See, Foster v. Superior Court*, 107 CA.3d 218, 230 (1980) – in a criminal action so the defendant could exercise the constitutional rights of confrontation and cross examination;

---

affidavits showing good cause and materiality to the pending litigation. The court is required to conduct an in camera examination of the records and exclude certain materials from disclosure as per Evid. Code, § 1045 (b).

[4] District courts have recognized the jurisdiction of a federal court to make such orders. *In re Anthony H.*, 129 Cal. App. 4th 495 (2005), was a case in which a district judge denied a request for disclosure of a juvenile case file on the ground that the juvenile court was vested with exclusive authority to decide whether to disclose the records. However, that analysis was then rejected in *Horn v. Hornbeak*, 2010 WL 1027508 (E.D. Cal. March 18, 2010), on the ground that federal courts are not bound by state law, and indeed the Court making that decision cited *Gonzales*, 336 F.3d at 834-35 and *Maldonado*, 2007 WL 4249811 at *5.

Susan Schofield v. County of Los Angeles, et al.                    Case No: 2:22-cv-04332-JGB (AS)

PG. 7
MEMORANDUM OF POINTS AND AUTHORITIES

*Navajo Express v. Superior Court*, 186 Cal.App.3d 981, 985 (1986) – in a civil action brought by the minor]

Furthermore, Plaintiff is entitled to the production of any designated documents within the scope of Rule 26(b), which encompasses all documents within the Defendant's "possession, custody, or control" as per Fed R. Civ. P. 34(a)(1). California state law restrictions on discovery do not apply in federal civil rights actions, a position supported by several federal court rulings.

Thus, this Court has the authority to make the Orders requested by the Motion.

**B. Plaintiff Has Access To The Juvenile Case File But Defendants Do Not; And The §827 Petition Process Is Inconsistent With Federal Discovery Requirements.**

Navigating the labyrinthine statutes of California's Welfare and Institutions Code §827(a)(1)(C) and (D), minors and their parents, like Plaintiff, are theoretically – accorded the right to receive a *copy* of their juvenile case file. In contrast, Defendants' counsel – even *County Counsel* in a closed case – cannot **legally** inspect records because they are not "actively participating in criminal or juvenile proceedings involving the minor." [5] [§827(a)(1)(E)] Should be no surprise, counties do ignore this rule. Adding a twist to this legal saga, some counties, as highlighted in cases like *Nunes v. Carrie Stephens, et al.*, 19-CV-00204-AWI-BAM and *A.C. v. County of San Diego* 18-CV-02227, have artfully sidestepped these restrictions, illustrating the intricate dance between legal access and procedural decorum.

This discrepancy in access under §827 creates significant discovery

---

[5] The potential delay in accessing records should be a significant concern for Defendant's counsel, considering the possibility of not receiving crucial records related to their clients' claims until more than a year after the lawsuit is initiated. This concern is not merely theoretical but has been practically illustrated in this specific case, where such a delay indeed transpired, underscoring the practical implications of this procedural lag.

challenges in civil rights cases against social workers. Theoretically, Plaintiffs should have full access to their juvenile case files, while Defendants' private counsel are restricted from accessing juvenile proceedings until completing their §827 process. Yet, in practice, parents are often denied access, and Defendants' attorneys gain access unlawfully, disrupting the balance of fairness in the legal process.

*First*, the §827 petition process is markedly inconsistent with the broad scope of discovery allowed under Federal Rules of Civil Procedure 26(b)(1). Whereas California Rule of Court 5.552(e) permits juvenile courts to withhold case files to protect a minor's privacy, federal courts tend to favor disclosure when balancing privacy with the need for discovery.[6] The directive for juvenile courts to err on the side of nondisclosure, as seen in *Pack v. Kings County Human Services Agency*, 89 Cal.App.4th 821, 829 (2001), conflicts with the federal courts' pursuit of transparency and hinders the ability to reach the merits of claims or defenses effectively.[7]

Under what other area of law is a child who is *not* a ward or dependent of the Court (as here), have to give up their rights – and the child's parents give up their rights – to decide what is in the child's best interest in terms of their "privacy"? The whole concept throws the rights of parents and children on its head yet again, in cases like this where Plaintiffs have already lived through an experience where they often feel beaten about the head and neck and are left wondering things Plaintiff and her social network have heard too many times to count – "How on Earth does this happen in America[,]" and, "I would never have believed it until it happened to us."

**Second**, federal discovery rules require parties, at the outset of litigation, to complete initial disclosures providing "a copy – or description of by category and location – of all documents . . . . that disclosing party has in its possession, custody,

---

[6] The federal preference for disclosure, as exemplified in *Kelly v. City of San Jose, 114 F.R.D. 653, 660 (N.D. Cal. 1987),* underscores the broader approach to discovery in federal question cases.

[7] The tendency of juvenile courts to favor nondisclosure impedeS the discovery process essential for the just resolution of federal civil rights cases.

or control and may use to support its claims." F.R.C.P. 26(a)(1)(ii). This is impossible here because Defendants cannot inspect their own records – nor can their attorneys – without the juvenile court's permission. Because the §827 process can take inordinate amounts of time, the case remains on the federal court docket, memories fade, and costs accrue while the parties wait. [8]

**Third**, the concept that the juvenile court is the arbiter of what is material to the federal litigation does not square with federal law. Under §827 and Rule 5.552, the parties must establish *good cause* for disclosure. This showing is incompatible with FRE 402, which states that materiality *should have no part in construing* the Federal Rules. *Soto*, 162 F.R.D. at 609.

**Fourth**, under §827, the burden of overcoming confidentiality is placed *on the party requesting the petition*, whereas *under federal law, the burden is on the party opposing discovery*. [*Miller v. Pancucci*, 141 F.R.D. 292, 298-9 (1992) (citing *Blankenship v. Hearst Corp.* 519 F.2d 418, 429 (9th Cir. 1975))] This is a completely different approach, and obviously one more designed to liberalize discovery, and get to the truth.

It is not safe to assume that the juvenile court has a unique vantage point to know or understand what records are relevant to civil rights claims, it is in fact an argument without foundation at all. At no time does a dependency court decide whether a party's constitutional rights have been violated. [9]

---

[8] It is axiomatic that, as time passes, it becomes harder for Defendants to defend the action as witnesses become unavailable and memories fade. See *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (passage of time can prejudice a defendant).

[9] This statement does not encompass instances where juvenile courts have identified failures in providing proper "notice" to a parent regarding proceedings, which raises substantial constitutional concerns. It's crucial to recognize the specific judicial nature of a "juvenile court" as a superior court exercising limited jurisdiction arising under juvenile law.' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 790; *Daniel V. v. Superior Court* (2006) 139 Cal.App.4th 28, 47.) Its authority is delegated by the Legislature, and it lacks power to exceed that legislative grant of authority. (*In re Silvia R.* (2008) 159 Cal.App.4th 337, 345-346.). Additionally, it's noteworthy that in juvenile court proceedings, attorneys often advise their clients that civil rights do not apply in juvenile court proceedings.

**C.** **More Practical And Significant Issues With Juvenile Court §827 Process**

There are additional reasons to those noted above as to why this Court should adopt the Proposed Order as the Order of this Court. The list below will touch briefly on those reasons:

1 – <u>Time</u>: Requests under W&IC §827 routinely take months to process AFTER an Order requiring their production. The proposed Order requires the documents be prepared for copying by a licensed photocopy company within 40 days. That company can scan them on-site, leave the Clerk a copy to be held in case of disputes over redactions or withheld documents.

2 – <u>Redactions & Missing Documents</u>. Plaintiff has read declarations from the aforementioned civil rights attorneys who have often seen that certain documents received in the juvenile proceedings are not included in the §827 production in their own cases where a federal civil rights suit follows the juvenile dependency proceeding.

In *Ibraham v. County of Los Angeles*, 18-CV-06013-CBM-SK (Central Dist.), the court approved a stipulation between counsel allowing the plaintiffs' counsel to produce juvenile case file documents obtained by the associated plaintiffs' counsel to defendant's counsel, to include transcripts and the often very important "supervised visitation logs," that did not arrive with the §827 production. [Dkt. 117 – Stipulation & Dkt. 118 – Order][10]

3 – <u>Unfamiliarity with civil rights law</u> causing uniformed and potentially case-altering production decisions as to documents from the juvenile case file.

4 – <u>No declaration of custodian of record</u>, no averment from any source as to the production being thorough or complete or who will be responsible if it is not.

5 – <u>No privilege log</u> given to determine the basis for documents withheld

---

[10] It is not uncommon that counties, including County of Los Angeles, do not keep the underlying sworn statements in support of an application for a warrant for removal in the court file! Parents and children may seek the entire file, yet never see one of the most important documents in the case!

or redactions made; the significance of this lacking information is immeasurable.

6 – <u>Transcript issues</u>. Frequently, the juvenile court does not even address the issue of transcripts, which requires a separate application be made.

7 – <u>Documents produced</u> by the Superior Courts are usually in paper. The Order's proposed method results in # stamped PDF documents, so all counsel are on the "same page."

8 - <u>Conflict with federal law</u> burden meeting obligations on establishing confidentiality.

9 – <u>Neutrality</u>. The proceeding/decision is made by a truly neutral court with zero of the fraternal or sorority effect at play.

10 – <u>Added expense.</u> The state court process adds expenses to the case.

11 – <u>Interference with 42 U.S.C. 1983</u>. The state court process hampers the private attorney general role, which brings the intent of 42 U.S.C. 1983 to bear in civil rights matters.

12 – <u>The Federal Court does not end up deciding discovery</u>. Refusing the orders requested herein creates a situation where another court is not only making decisions on what documents are relevant or are felt by that Court to have "substantial relevance" to a civil rights matter (as mentioned, that alone is <u>*not*</u> the standard in a federal matter), but where the presiding court in the civil rights matter, this Court, is prohibited from conducting some of its most solemn and statutory obligations, which are applying federal discovery rules and federal discovery precedent not to mention civil rights experience, to the case this Court is handling.

## D. **California Reporting Party & Foster Care Placement Confidentiality Cannot Be Applied, Doing So Epitomizes Denial of Due Process**

Given the authority already provided on this Court's authority to make orders releasing juvenile case files, Plaintiff has included in the Proposed Order

provisions for what can be redacted by the agency. The redactions are limited to social security numbers and dates of birth for *anyone* in the documents.

Plaintiff notes that the Proposed Order submitted herewith does not allow DCFS to withhold the identity and information of the "reporting party." Indeed keeping this obvious contemporaneous to the removal event witness from Plaintiff is another of the practices under state law that render the juvenile dependency system constitutionally deficient on its face! Civil rights litigants not being privy to the reporter identity and contact information creates an irremediable conflict in the presentation of evidence at trial in their federal civil rights case which if not handled in the manner argued herein is manifest error.[11]

**First**, allegations *from* the reporting party may appear several times in the juvenile case files, such as in notations of the initial call to a "hotline," and thereafter in conversations with an "emergency response" social worker in DSLs. The unknown person(s)' allegations are occasionally inserted right into the WI&C 300 Petition! The defense will absolutely want to use anything this unknown-to-plaintiff's witness may be alleged to have said/reported because of course it supports that all they did was appropriate and altruistic. As previously noted, hearsay of this nature is used in dependency courtrooms every single day. The claimed justification for hiding identities is removing retaliation concerns to persons coming forward to report.[12] Yet weight of some speculative retaliation cannot conceivably outweigh the right of parents and children to pursue redress for violations of their familial association rights and all the damages that flow from such violations, lest due process be discarded completely.

In these familial rights violation cases, there is a longstanding requirement,

---

[11] The issue of whether *mandated* reporters or not mandated reporters is of zero significance to this issue and the documents containing information on the reporting party would virtually never be less than two – the "screener" documents (hot line call), and the Detention Report.

[12] As an irony rich aside, "retaliation" is often the reason a CPS call is made! Examples, a landlord-tenant dispute, an ex-spouse/girlfriend/boyfriend/lover spat. This retaliation aspect is such a problem in family law cases, California passed statutes to discourage it. [F.C. 3027] Or in this case, proving the social workers/ex-spouse retaliatory animus, resulting in the removals.

an actual element of claims involving violation of familial association rights – in more than just the Ninth Circuit - of social workers (and police) doing a "*reasonable investigation*" before taking actions of the most psychologically damaging nature *to all family members* when removing children. [*Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir.1997) – serious allegations of abuse which are *investigated* and *corroborated* usually gives rise to a reasonable inference of imminent danger; *Good v. Dauphin County Soc. Serv.* [ ], 891 F.2d 1087, 1093 (3d Cir.1989) (citing *Mincey v. Arizona*, 437 U.S. 385, 393, (1978)); *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir.1988) – child abuse investigator has *duty to investigate information* that would clarify matters prior to separating children from parents); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) – duty to "*make a thorough investigation* and exercise reasonable judgment before invoking the awesome power of arrest and detention[;]" *see also, Wallis*, 1136; *emphasis*]

Against this backdrop is a state law which purports to bar civil rights litigants from knowing the identity and contact information of the very person(s) whose report instituted the agency's involvement in the Plaintiffs' lives! The person who saw, or heard, and reported something they believed constituted a concern for child abuse has their identity kept from Plaintiffs!? The proposition should be shocking! What if they were incompetent, or simply retaliating against the parent? Or, as has been the experience of Plaintiff and her social network on many times, what if they *never said the words attributed to them by the social worker*? And yet, Plaintiffs are not allowed to know who that person is so they can talk to or depose them?

It is irreconcilable that federal decisional law makes reasonable investigation an element of these civil rights claims, but the identity of the person making the initial allegations, the initial contact, is kept from Plaintiffs under state law? [*See Wallis*, 1138]

Also, if one of these cases goes to trial, and the position this identifying

Susan Schofield v. County of Los Angeles, et al.                                    Case No: 2:22-cv-04332-JGB (AS)

PG. 14
MEMORANDUM OF POINTS AND AUTHORITIES

information can be withheld from the plaintiff per state law has prevailed, do all of their statements in the records get redacted for trial? Or are those who testify forbidden to say a word about the statements of this person(s) and their comments redacted? Such steps would literally be required by due process. The hearsay exceptions of F.R.E. 803 are numerous enough that an attorney – or guided pro se litigant, under the lenient standard – could potentially navigate a witness through the hearsay obstacle using one or more of the exceptions to bring right into trial not just hearsay, but hearsay from a person whose identity the plaintiff never knew, and never had a chance to examine. Not due process! Due process requires both sides to have access to this evidence and information.

A most poignant quote from the case of *Higgason v. Superior Court*, 170 Cal. App. 3d 929, 946 (1985) applies here with force,

> There are few principles of human affairs more self-evident than this: The unverified story of an untested informer is of no more moment than a fairy tale on the lips of a child, and the same tale from an anonymous tattler is worth much, much less.

There is no due process for Plaintiff unless full and complete disclosure of the identity and contact information of reporters is provided to both sides. These cases are often the only light shown on the systemic abuse of families, the only place of remedy for the family victims, and only place for public accountability for the rest of us. The child welfare agencies will fight tooth and nail to stop this from happening, always touting their altruistic purpose and goal "to protect children." In the words of Henry G. Bohn in 1855, "The road to hell is paved with good intentions." [A Handbook of Proverbs, Henry G. Bohn (1855)]

## E. <u>State Immunity Laws Do Not Provide A Shield From 1983 Claims, Nor Should Reporter & Foster Care Identity And Contact Information Be Allowed To Be Shielded From Plaintiffs; Federal Preemption Applies</u>

The Supreme Court has repeatedly held "a state law that immunizes government conduct otherwise subject to suit under § 1983 is *preempted* even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy." [*Felder v. Casey*, 487 U.S. 131, 139 (1988); see *Martinez v. California*, 444 U.S. 277, 284, fn. 8 (1980)- ["[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 ... cannot be immunized by state law"]. Under preemption principles, state statutory immunities for child abuse investigations may not ordinarily be asserted as a defense to a §1983 claim. [*See Good v. Dauphin Cnty Soc. Serv. for Children and Youth*, 891 F.2d 1087, 1091 (3d Cir.1989) – child protective services law could not be asserted as a defense to 1983 claim alleging that defendants committed unlawful search during abuse investigation; *Wallis v. Spencer*, 202 F.3d 1126, 1143-4 (9th Cir. 1999) – court erred in "appl[ying] state statutory immunities for child abuse investigations to … §1983 action"] It is the same supremacy considerations that apply in this situation.

As pointed out next, in both categories of witnesses – reporting parties and foster providers, <u>California law itself allows release of their identifying information</u>.

### 1. <u>Reporting Party Can Be Provided Under State Law</u>

Under California law, P.C. §11167(d)(1) provides the identity of reporters may be disclosed "by court order." The statute places no restriction on that authority. Moreover, P.C. §11167.5(b)(1) states that reports of suspected child abuse or neglect and information contained therein may be disclosed to "[p]ersons or agencies to whom disclosure of the identity of the reporting party is permitted under §11167." Plaintiff in the instant case is a "persons" whom, with a court order, based on a showing that their right to pursue their civil rights case outweighs any right the reporting party has to confidentiality, should be granted access to the identity of the

reporting party(s) so they may be cross-examined.

"A juvenile court has broad and exclusive authority to determine whether, and to what extent, to grant access to confidential juvenile records." (*In re R.G.*, 2000) 79 Cal.App.4th 1408, 1413; (*In re Keisha T.*, 1995) 38 Cal.App.4th 220 at pps. 225-226, 240). The rules behind W&IC §827 recognize "there may be situations in which competing interests require the disclosure of some material in a juvenile court record. They all recognize it is the juvenile court that is in the best position and statutorily authorized to make the decision of whether and what material should be released." (*In re Keisha T., supra*, 38 Cal.App.4th at p.233). These competing interests "may tip the balance in favor of disclosure." *Id*. at 235, *Navajo Express v. Superior Court* (1986) 186 Cal.App.3d 981, 985 (disclosure ordered for use in a civil action brought by a minor).

As this Court has the authority to make the orders requested, releasing juvenile case files, it clearly may do so given state law does not prohibit doing so either.

## 2. <u>Foster Care Placement Information Also Must Be Released</u>

DCFS redacted the identity and contact information of the minor's foster care providers pursuant to Health and Safety Code §1536(b). The statute states that "to protect the personal privacy of foster family homes … and to preserve the security and confidentiality of the placements in the homes, the names, addresses, and other identifying information of facilities licensed as foster family homes … shall be considered personal information for purposes of the Information Practices Act of 1977." This privilege is far from absolute. The statute and the Information Practices Act carve out many exceptions for which persons may receive private and personal information, because the legislature recognized that there are many legitimate needs for this information that outweigh the privacy interests of the foster

care providers. The Information Practices Act provides that "[a]n agency shall not disclose any personal information in a manner that would link the information disclosed to the individual to whom it pertains unless the information is disclosed, as follows: … To any person pursuant to … court order … if, before the disclosure, the agency reasonably attempts to notify the individual to whom the record pertains, and if the notification is not prohibited by law." (Civil Code §1784.24). The Court has the authority to order this disclosure, and the agency to provide the information.

If the Court weighs the competing interests at stake, it should find that the interests in this case favor disclosure. The minor as well as the parents require the information to properly vindicate violation of their constitutional rights. This need outweighs the privacy interest of the former foster care providers, especially given that they no longer have placement of the child, and they do not face any risk of harassment from the parents. They are percipient witnesses with valuable information pertinent to the prosecution of Plaintiff's civil rights claims, such as their communications with the social worker defendants, and their observations and participation in the children's care and medical treatment, and discussions with Defendants about Plaintiff.

## F. **Prior §827 Information & Belief Regarding The Redaction Issue**

Plaintiff has read declarations filed by the civil rights attorneys including Robert Powell, Shawn McMillan, and Donnie Cox, whom have all dealt with the issue of finally receiving juvenile case files after months (in L.A. over a year is not uncommon), only to find them riddled with redactions and of course, no privilege log even giving a hint of what the claimed basis for redaction might be.

Plaintiff has already mentioned *Nunes v. Carrie Stephens, et al.* (II), which involved claims of unlawful pre-§827 Petition distribution of juvenile case file documents by the County to private counsel. The following is what happened in the

1   first filing, *Nunes v. County of Sonoma* (I) in the Eastern District, Case #17-CV-

2   00633-DAD-SAB, a case also alleging unlawful interference with familial

3   association rights, that in fact led to learning about the privacy violations alleged in

4   Nunes (II), because a §827 Petition was filed.

5          Plaintiff submits what is described below is typical of the course and

6   sequalae of §827 proceedings, offered to show what is reasonably likely to occur if

7   this Court will not make the Orders requested, a §827 Petition must be filed in the

8   County of Los Angeles Superior Court.[13]

9          The original W&IC §827 Petition for *Nunes (I)* was submitted to the

10  juvenile court on December 28, 2017. It included all required documents. As

11  required by CRC 5.552 the Request for Disclosure of Juvenile Case File (JV-570),

12  Notice of Request for Disclosure of Juvenile Case File (JC-571), and a blank

13  Objection to Release of Juvenile Case File (JV-572), were served on all necessary

14  parties/persons ten days prior, on December 18, 2017.

15         A January 4, 2018 letter was received from Sonoma Superior Court,

16  notifying plaintiffs no records were found *in the court's system* under the name /

17  date of birth provided, returning the original §827 Petition. The clerks' office was

18  apparently unaware that there might be an open Human Services Department of the

19  County of Sonoma ("HSD") file without a corresponding agency file and declined

20  to file the Petition and returned it in the envelope.

21         On January 6, 2018, Robert Powell sent a letter clarifying that the Request

22  was for "Agency Docs Only," which in fact <u>was stated on the originally submitted</u>

23  <u>§827</u>. It was requested that the §827 packet be filed as submitted, and it was sent

24  back with the letter.

25         Twenty-five (25) days later, on January 31, 2018, the Petition was filed and

26

27  [13] Like this case, *Nunes* did not involve sexual or physical abuse. It's a case about a baby with an almost
insignificant subdural hematoma caused by the family's dog, and an over 50-day social worker and policy forced

28  separation that ensued. This case arose from accusations of over- or undermedication. Moreover, at a recent hearing,
social workers involved in the juvenile case conceded that the children were NEVER over-medicated.

Susan Schofield v. County of Los Angeles, et al.                                    Case No: 2:22-cv-04332-JGB (AS)

PG. 19
MEMORANDUM OF POINTS AND AUTHORITIES

1  a Notice of a hearing set for February 20, 2018 was issued with an Order, which

2  stated, "The Community Services Agency is directed to appear at the hearing and

3  provide two copies of the records."

4       February 20, 2018, Robert Powell drove the 82 miles, approximately 1.5

5  hours from San Jose to the dependency courthouse on Blue Gum Ave. in Modesto.

6  Once in court, the judge announced that HSD had in fact *not provided* the records.

7       The matter was continued to March 17, 2018.

8       On April 12, 2018, just shy of four months since the §827 Petition had been

9  filed, the agency's records were received by Robert Powell. They were thoroughly

10  reviewed on April 14. Incredibly, there were **152** separate redactions just within the

11  22 pages of Delivered Service Logs ("DSL" - chronological notes of contacts made,

12  and actions taken by social workers in a case) and another **53** redactions in the

13  remaining 132 pages of various other documents, including medical records, police

14  reports, and other agency prepared documents, etc.

15       On May 7, 2018, Robert Powell submitted to the juvenile court a request

16  for orders to receive unredacted - at least less redacted - copies! The pleading was a

17  10-page declaration after a 2-page form required by the court, detailing thirty (30)

18  pages of exhibits (which were attached) with the redactions. This effort took just

19  over five (5) hours to complete. In addition, though requested in the §827 Petition

20  the court ordered the documents could be released to the defendants' counsel in the

21  civil rights case, the court had failed to address that request in its prior Order,

22  therefore it was requested the court make that order as well.

23       The matter was set for May 17, 2018, and again, Robert Powell drove the

24  82 miles for about 90 minutes to Modesto for the hearing. The court issued the Order

25  (filed the next day), granting the documents with only redactions for Social Security

26  numbers, and the (recurring problem in civil rights cases of) redacting the reporting

27  party identities.

28       That order came out May 18, 2018, **five months after the initial W&IC**

**§827 Petition filing**, and at least two trips to court. Documents were received heavily redacted. And yet, during the run up to this hearing, in Robert Powell's communications with the County Counsel, it was learned *that the entire unredacted file had been provided to the County's privately retained attorneys*. From that, was the genesis of *Nunes (II)*. One more very troubling thing.

Also, in the case of *Sigal* noted above, the first round of production had numerous redactions and required a Motion to Compel. Same exact thing in the Robert Powell's case of *Scanlon v. County of Los Angeles*, 2:18-CV-07759-CBM-AS (Cent. Dist), numerous redactions, Motion to Compel. In the Declaration of Shawn A. McMillan that Plaintiff read, therein he speaks of how in the case of, "*G.M. v. County of Riverside*, I or one of my associates had to go to Court *twelve times over the course of four years* on the W&IC 827 request in order to obtain a complete and unredacted copy of his juvenile case file."

Indeed, it's critical to note that the Plaintiff is navigating this complex legal landscape as a *pro se litigant*, lacking the specialized legal training and experience that might otherwise aid in a more efficient traversal of this process. This is not merely a procedural hurdle; it poses a significant disadvantage when compared to seasoned attorneys who routinely handle matters of this specific nature. The odds of Plaintiff achieving a favorable outcome under these circumstances are markedly reduced, raising serious concerns about equitable access to justice.

These are not one-off events, one-off stories. These are realities of going through the State courts to get the relevant, contemporaneous records of the underlying events in a case involving violation of familial rights of association. Of course some of these issues vary in intensity/frequency from County to County, but some of these issues, such as the "fraternity/sorority effect," the juvenile dependency laws complained of hereinabove, they span all Counties, and again Plaintiff submits that all of the foregoing issues and problems undermine the vindication of important rights in a colossal way.

**V. ROOKER-FELDMAN DOES NOT APPLY**

Out of an abundance of caution, in response to the opposition given to Jani's Motion to Compel, in particular, Section I (Jani's Case, Docket No. 67 ("COLA's Opposition") at 2:1-3:21). For some reason, it is asserted that this similar motion is related to a judgement as a result of an unconstitutional statute or improper application of the law*?!* (COLA's Opposition at 2:8-10). This is simply not the case.

This request from the Plaintiff is straightforward: for the court to exercise its authority to order the disclosure of the juvenile case files, paralleling recent precedents such as the actions taken in *Mark G.*'s case (referenced in Docket Nos. 44 and 46). This request is rooted in established legal procedures and does not stem from any unconstitutional or improper legal grounds, as suggested in the opposition.

**VI. CONCLUSION**

In conclusion, this Court has the jurisdiction and authority to order disclosure of the juvenile case files. W&IC §827 does not bind federal courts. Additionally, there is good cause for this Court to order disclosure, as the §827 petition process tends to be extremely long, causing substantial delays in timely litigation of the federal case, frequently involves numerous improper redactions, has no verifiability as to being a business record or providing justification for redacted information, contains a burden-carrying posture nearly the exact opposite of burden-carrying responsibilities found in the broad federal discovery rules and case law, and, with the refusal to provide reporting party information, results in documents containing significant hearsay from unknown claimants to be used by civil rights litigants, which is something absolutely inimical to due process.

Although there are legitimate privacy interests at stake, these can be sufficiently protected by the Protective Order provisions included in the Proposed Order submitted herewith.

For the reasons stated above, Plaintiff (1) requests an Extension of Time for Discovery (2) Requests the Court make an Order Re: Production of Juvenile Case

1  File submitted as Proposed.

2

3                                                    **SUSAN SCHOFIELD**

4                                                    Pro Se Litigant

5

6

7  **Dated**: December 23, 2023

8                                                    **Susan Scofield**

9                                                    Pro Se Litigant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28